Index No. 15 CV 6091 (ILG) (VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MOSHE UNGAR,

Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICER
MICHAEL VICTORIA, Shield # 25392, POLICE
OFFICER JASON WHYTE, Shield # 29767, POLICE
OFFICER ALBERT ROBLES, Shield # 5848,
SGT. RAYMOND GONZALEZ, Shield No. 599,
SERGEANT YANDEI PERALTA, Shield No. 4060,
E.M.T.TECHNICAN ROMAN FRANKLIN,
Shield # 1589, POLICE OFFICERS JOHN/JANE
DOE(S) #S 1-10,

Defendants.

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS

*ZACHARY W. CARTER*
*Corporation Counsel of the  City of New York*
*Attorney for Defendants City of New York,*
*Victoria, Whyte, Robles, Gonzalez, Peralta,*
*and Franklin*
*100 Church Street, Room 3-126*
*New York, N.Y.  10007*


*Of Counsel: Jorge Marquez*
*Tel:  (212) 356-2336*

## TABLE OF CONTENTS

TABLES OF CONTENTS ………………………………..……………………………i

TABLE OF AUTHORITIES …………………………………………………...…….iii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT............................................................................................2

        POINT I ...........................................................................2

                PLAINTIFF FAILED TO COMPLY WITH LOCAL CIVIL RULE 37.3 TO CONFER IN GOOD FAITH WITH OPPOSING COUNSEL IN ORDER TO RESOLVE DISCOVERY DISPUTES PRIOR TO SEEKING COURT INTERVENTION.........................2

        POINT II ...........................................................................5

                PLAINTIFF RELIES ON CASE LAW THAT DOES NOT APPLY THE NEW SPOLIATION STANDARD, WHICH PRECLUDES HIM FROM OBTAINING SANCTIONS, ESPECIALLY THOSE REQUESTED TO THIS COURT ...................................5

        A.    Plaintiff Argues that Defendants were Negligent, which Does Not Comply With the New Standard........................................................8

        B.    Finding of Spoliation Would Not be Warranted Even Under the Old Standard ...............................9

        1.    Plaintiff's Non-Cooperation During the Criminal Case of Luis Marte Made Civil Litigation Unforeseeable; Plaintiff's Reference to "a Number of Lawsuits" From Incidents Purportedly at Central Booking is Insufficient to Make Litigation Foreseeable ...........................9

        2.    Plaintiff Failed to Show that Defendants Had a Culpable State of Mind or a Duty to Preserve the February 28, 2015 video recording ...............12

        3.    Plaintiff Failed to Show that the Video Evidence Would Have Corroborated his Version of Events and Furthered his Failure to Intervene and Failure to Protect Claims ...........................15

C.      The Parties are Attempting to Contact Potential Witnesses; the Fact that no Witness has been Identified Cannot Serve as a Basis to Grant a Spoliation Motion .......................................................................... 20

POINT III ............................................................................................................ 21

PLAINTIFF    REQUESTS    SANCTIONS    THAT    ARE DISPROPORTIONATE   AND   UNDULY   PREJUDICIAL   TO DEFENDANTS ............................................................................................ 21

POINT IV ............................................................................................................ 23

PLAINTIFF's ATTORNEY IS NOT ENTITLED TO ATTORNEY FEES ................................................................................................................ 23

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adorno v. Port Auth.*,
  258 F.R.D. 217 (S.D.N.Y. 2008) ................................................................. 18

*Anderson v. Branen*,
  17 F.3d 552 (2d Cir. 1994) ........................................................................ 13

*Best Payphones, Inc. v. City of N.Y.*,
  No. 1-CV-3934 (JG) (VMS), 2016 U.S. Dist. LEXIS 25655 (E.D.N.Y. Feb. 26,
  2016) ........................................................................................................ 6

*Black v. Coughlin*,
  76 F.3d 72 (2d Cir. 1996) .......................................................................... 16

*Blake v. Base*,
  90-CV-0008, 1998 U.S. Dist. LEXIS 14659, 1998 WL 642621 (N.D.N.Y. Sept.
  14, 1998) (McCurn, J.) ............................................................................. 13

*Bullard v. City of New York*,
  240 F.Supp.2d 29 ............................................................................... 9, 10

*Cat3, LLC v. Black Lineage, Inc.*,
  164 F. Supp. 3d 488 (S.D.N.Y. 2016) .................................................... 5, 6

*Charles Blake v. Kelly*,
  2014 U.S. Dist. LEXIS 119090 (S.D.N.Y. 2014) ......................................... 9

*Chin v. Port Auth. of N.Y. & N.J.*,
  685 F.3d 135 (2d Cir. 2012) ...................................................................... 11

*Creighton v City of NY*,
  2017 US Dist LEXIS 21194 (S.D.N.Y. Feb. 14, 2017) ........................... 8, 11

*Curcio v. Roosevelt Union Free Sch. Dist.*,
  283 F.R.D. 102 (E.D.N.Y. 2012) ............................................................... 19

*Darnell v. Pineiro*,
  849 F.3d 17 (2d Cir. 2017) ........................................................................ 14

*De Espana v. Am. Bureau of Shipping*,
  No. 03 Civ. 3573 (LTS) (RLE), 2007 U.S. Dist. LEXIS 41498, 2007 WL
  1686327 (S.D.N.Y. June 6, 2007) ............................................................. 11

*Deanda v. Hicks*,
   137 F. Supp. 3d 543 (S.D.N.Y. 2015) ........................................................... 8, 10, 18

*Fujitsu Ltd. v. Fed. Exp. Corp.*,
   247 F.3d 423 (2d Cir. 2001) ........................................................................ 18

*Grant v. Salius*,
   No. 09 Civ. 21, 2011 U.S. Dist. LEXIS 133248, 2011 WL 5826041 (D. Conn.
   Nov. 18, 2011) .............................................................................................. 8

*Keith v. City of New York*,
   2014 U.S. Dist LEXIS 166469 ........................................................................ 9

*Kingsley v. Hendrickson*,
   135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015) .................................................. 14

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998) .......................................................................... 8

*Manganiello v. City of New York*,
   612 F.3d 149 (2d Cir. 2010) ........................................................................ 15

*Poulos v. City of New York*,
   U.S. Dist. LEXIS 6301 ................................................................................... 9

*Residential Funding Corp. v. DeGeorge Capital Corp.*,
   306 F.3d 99 (2d Cir. 2002) ................................................................ 4, 5, 6, 19

*Revson v. Cinque & Cinque, P.C.*,
   221 F.3d 71 (2d Cir. 2000) ............................................................................ 6

*Simms v. City of New York*,
   480 Fed. Appx. (2d Cir. 2012) ..................................................................... 10

*Stewart v. Schiro, No. 13-cv-3613*,
   *2015 U.S. Dist. LEXIS 52962, 2015 WL 1854198 (E.D.N.Y. Apr. 22, 2015)* ......................... 13

*Strano v. City of New York*,
   1998 U.S. Dist LEXIS 9258 ............................................................................ 9

*Thomas v. Butkiewicus*,
   No. 3:13-CV-747 (JCH), 2016 U.S. Dist. LEXIS 57163 (D. Conn. Apr. 29,
   2016) ............................................................................................................ 6

*Thurmond v. Bowman*,
   No. 14-CV-6465W, 2016 U.S. Dist. LEXIS 45296 (W.D.N.Y. Mar. 31, 2016) ........................ 6

*West v. Goodyear Tire & Rubber Co.*,
    167 F.3d 776 (2d Cir. 1999) ............................................................................ 4

*Wright v. Smith*,
    21 F.3d 496 (2d Cir. 1994) ............................................................................ 16

**Statutes**

28 U.S.C.§ 2074(a) ............................................................................................. 5

42 U.S.C. § 1983 ............................................................................................ 14, 16

N.Y.C.P.L. § 30.30 ............................................................................................. 9

**Other Authorities**

Fed. R. Civ. P. 37(a)(1) ...................................................................................... 2

Fed. R. Civ. P. 37(e)(2) ................................................................................... 5, 6

Fed. R. Evid. 403 .............................................................................................. 16

Local Civil Rule 37.3 .............................................................................. 1, 2, 3, 20

**PRELIMINARY STATEMENT**

On March 21, 2017, Plaintiff submitted a Notice of Motion for Spoliation Sanctions Pursuant to Rule 37(d) of the Federal Rules of Civil Procedure.  (Docket Entry No. 53).

In sum, Plaintiff alleges that video evidence was negligently destroyed by Defendants and requests that the Court either: (a) strike Defendants' answer to the complaint; or (b) allow a jury instruction that states that the video evidence would have supported Plaintiff's case and that, at the very least, Defendants should be held to have acted negligently towards Plaintiff.

The instant motion will show that Plaintiff's basis for the motion for spoliation is improper, especially in light of the fact that a new updated certification was provided that indicated that the digital video recordings on or around February 28, 2015, at Brooklyn Court Section ("B.C.S."), were deleted every thirty (30) days pursuant to B.C.S. policy.  Moreover, Plaintiff cannot meet the new standard regarding spoliation motions, which require a level of intent higher than negligence or gross negligence.

The Federal Rules of Civil Procedure were amended to alleviate the burdensome and oftentimes unreasonable holding of courts with respect to spoliation evidence, wherein parties were punished because they followed internal procedures regarding storage and deletion of electronic and video information.  Pursuant to this standard, Defendants cannot be faulted for the destruction of the video evidence since it was made pursuant to internal B.C.S. policy and not to deprive Plaintiff of evidence.  Either way, Defendants will explain that Plaintiff's motion would not proceed even under the old standard since litigation in this case was not foreseeable.

In sum, the fact that Plaintiff did not cooperate in the underlying criminal case against the purported aggressor, Luis Marte, was indicative that Plaintiff was not interested in pursuing legal recourse against indirect parties, such as the Defendants.  Moreover, the mere fact

that Plaintiff would not instigate civil action against Luis Marte, the alleged wrongdoer, adds to the factor that litigation against Defendants was not foreseeable.  As will be shown forthwith, striking Defendants' answer to the complaint or allowing an adverse jury instruction against Defendants would be entirely improper, even under the old standard.   Thus, this Court should deny Plaintiff's motion for spoliation sanctions without leave to re-file since the facts and circumstances pertaining to the preservation of this video cannot be held against Defendants under any circumstances.

## ARGUMENT

### POINT I

**PLAINTIFF FAILED TO COMPLY WITH LOCAL CIVIL RULE 37.3 TO CONFER IN GOOD FAITH WITH OPPOSING COUNSEL IN ORDER TO RESOLVE DISCOVERY DISPUTES PRIOR TO SEEKING COURT INTERVENTION**

It is incredulous that Plaintiff would submit a motion for spoliation based on Defendants' prior representation that the videos recorded at B.C.S. were deleted after a ninety (90) day period when – *at a conference prior to Plaintiff's filing of the instant motion* - Plaintiff was informed that the video recording at B.C.S. was deleted after a thirty (30) day period and that Defendants would submit an updated certification to that effect.  Although Plaintiff recognizes that an updated certification would be forthcoming, Plaintiff states that "no follow-up documentation was provided despite Court Order for same."  (Plaintiff's Memorandum in Support of Motion for Spoliation ("Pl's Memo."), p. 5, Docket Entry No. 54)  Plaintiff, however, failed to inform the Court that he agreed with defense counsel to receive the updated certification at a later date in order to accommodate the officer who would be attesting to the same.

On March 1, 2017, the undersigned called Plaintiff's counsel, David Zelman, and informed him that the sergeant responsible for the updated certification was out on vacation and that said certification could not be provided by this date; Mr. Zelman expressed no concern and

acknowledged that Defendants could provide it afterwards – with no date certain – in order to accommodate the sergeant.  At *no* time between March 1, 2017, and March 21, 2017 (the filing date for Plaintiff's motion) did Mr. Zelman: (1) call the undersigned to follow-up on the updated certification; or (2) state that a motion for spoliation would be forthcoming.[1]

Defendants obtained the certification concerning the thirty (30) day deletion period for the videos at B.C.S.  To the undersigned's surprise, however, Plaintiff decided to file the present spoliation motion instead of conferring with Defendants with respect to the aforementioned updated certification.  More importantly, the matter concerning this update certification is a discovery dispute that could have *easily* been resolved had Plaintiff simply complied with Local Rule 37.3.  Although Defendants acknowledge that the Court ordered Defendants to produce the updated certification by March 1, 2017, the undersigned was under the reasonable belief that – given that the certification pertained to a discovery matter – the parties' agreement to have the certification produced at a later date, especially because of the sergeant's personal matter, was enough.  Furthermore, the production of the certification did not respond to an immediate deadline, so time was not of the essence with respect to its production.  In any case, Local Civil Rule 37.3 is clear: "[p]rior to seeking judicial resolution of a discovery or non-dispositive pretrial dispute, the attorneys for the affected parties or non-party witness shall attempt to confer in good faith in person or by telephone in an effort to resolve the dispute, in conformity with Fed. R. Civ. P. 37(a)(1)."  Plaintiff, however, *never* attempted to confer with the undersigned with respect to this updated

---

[1] The updated certification was provided to Plaintiff shortly after the filing of Plaintiff's motion.

certification in compliance with Local Civil Rule 37.3, nor did he communicate that a motion for spoliation based primarily on the old certification was forthcoming.[2]

A purview of Plaintiff's motion shows that his basis for spoliation is substantiated on the belief that a video recording at B.C.S. on February 28, 2015, was deleted after a ninety (90) day period. Specifically, Plaintiff states that "Defendants admit that the recording in question was overwritten, i.e. destroyed, on or about May 28, 2015" (i.e., ninety (90) days after February 28, 2015) and that because Plaintiff's Notice of Claim was received on May 14, 2015, "Defendants had a duty to institute a litigation hold approximately two weeks before the video was destroyed. Defendants by their own admission failed to do so." (Pl's Memo., p. 6).

At the February 15, 2017 status conference, Defendants communicated to the Court and Plaintiff that the original certification concerning the deletion of video was incorrect and that a new certification would be provided. (*See* Docket Entry No. 47) Thus, Plaintiff's statement that Defendants admit to the destruction date of the recording as occurring on or about May 28, 2015, is untrue and deceiving. Moreover, had Plaintiff simply complied with Local Civil Rule 37.3, Plaintiff's motion would not have been based on such falsehood. Plaintiff, thus, blatantly misrepresents Defendants' position in order to substantiate his motion and the Court should admonish Mr. Zelman for failing to confer on such a simple matter, especially since he was fully

---

[2] Defendants note that this is not the first time that Plaintiff's counsel, Mr. Zelman, failed to comply with Local Civil Rule 37.3 in this case. On October 24, 2016, Magistrate Judge Marilyn Go denied Plaintiff's motion filed on October 15, 2016, because Plaintiff "fail[ed] to confer on unproduced discovery" with opposing counsel. In addition, Defendants note that, in a different case, District Judge Kiyo A. Matsumoto adopted a Report & Recommendation from Magistrate Judge Lois Bloom that noted that Mr. Zelman failed to comply with Local Civil Rule 37.3; Judge Matsumoto "agree[d] with Judge Bloom's finding that had plaintiffs properly conferred with defendants regarding discovery issues, at least some of the motion practice and related work would have been unnecessary…" *See* Case No. 15-CV-5132 (KAM) (LB) (EDNY) (Docket Entry No. 44) Thus, Plaintiff's counsel, Mr. Zelman, is a repeat offender of Local Civil Rule 37.3.

aware that a new certification would be produced and had agreed for its production after the March 1, 2017 date.

## POINT II

### PLAINTIFF RELIES ON CASE LAW THAT DOES NOT APPLY THE NEW SPOLIATION STANDARD, WHICH PRECLUDES HIM FROM OBTAINING SANCTIONS, ESPECIALLY THOSE REQUESTED TO THIS COURT

Plaintiff contends that Defendants should be sanctioned because they "spoliated critical evidence that they were obligated to preserve for the purpose of foreseeable litigation," specifically "the video footage from Kings County Central Booking from the date of the incident." (Pl's Memo., p. 1).  Plaintiff alleges that Defendants had notice that the video "was relevant to both a criminal matter and this civil matter."  (Id.)  Consequently, Plaintiff requests that the court either: (a) "strike their answer to the complaint and enter default judgment in Plaintiff's favor"; or (b) provide for a "mandatory or permissive adverse inference charge."  (Id.)  As explained below, however, Plaintiff's motion should be denied because he cannot meet the Rule 37(e) standard to impose spoliation sanctions against Defendants since the video was destroyed pursuant to B.C.S. procedures and not to deprive Plaintiff of evidence.

Defendants first note that Plaintiff's motion makes no reference of the fact that the spoliation standard changed after December 1, 2015.  Although some elements of case law may be applicable to the spoliation analysis, Plaintiff's Memorandum relies almost entirely on outdated court decisions.

The Second Circuit defines spoliation as the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Prior to December 1, 2015, while some circuits had required a showing of willfulness or bad faith

before a court could impose severe sanctions, such as dismissing a case, entering a judgment by default, or utilizing an adverse inference, the Second Circuit permitted such sanctions upon a finding that the party that had lost or destroyed evidence had merely acted negligently. *Residential Funding Corp. v. DeGeorge Capital Corp.,* 306 F.3d 99, 108 (2d Cir. 2002).

However, on April 29, 2015 Chief Justice John G. Roberts transmitted the revised Federal Rules of Civil Procedure, with the new amendments to Congress. In doing so, Chief Justice Roberts included an Order providing in part that "…[t]he foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." *2015 U.S. Order 0017*. The order is consistent with 28 U.S.C.§ 2074(a), which states in part, "[T]he Supreme Court may fix the extent to which such rule [of procedure or evidence] shall apply to proceedings then pending…" *Cat3, LLC v. Black Lineage, Inc.,* 164 F. Supp. 3d 488 (S.D.N.Y. 2016).

The amendments to the Federal Rules that became effective on December 1, 2015 mandate substantial changes, some of the most significant of which relate to spoliation sanctions under Rule 37(e). As noted, *supra*, the rule previously consisted entirely of a modest safe harbor provision that protected against the imposition of sanctions where electronically stored information was lost as the result of routine computer functions, such as automatic deletion. The amended rule is much more comprehensive; it was adopted to address concerns that parties were incurring burden and expense as a result of over-preserving data, which had been driven by the fear of severe spoliation sanctions, especially since federal circuits had developed varying standards for penalizing the loss of evidence. Fed. R. Civ. P. 37(e) *Advisory Committee's Note to 2015 Amendment.*

In issuing the new Rule, the Rules Advisory Committee explicitly rejected cases relied on by Plaintiff, such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), which authorized the giving of adverse inference instructions on a finding of mere negligence or gross negligence. Fed. R. Civ. P. 37(e)(2) *Advisory Committee's Note to 2015 Amendment*. Instead, the new Rule adopted the principle that severe sanctions are only permitted where the court finds an "intent to deprive another party of the information's use in the litigation," Fed. R. Civ. P. 37(e)(2). The new Rule 37(e) overrules the Second Circuit precedent of *Residential Funding Corp.* on the question of what state of mind is sufficiently culpable to warrant an adverse inference instruction, and other severe sanctions, when electronically stored evidence is missing. Fed. R. Civ. P. 37(e) *Advisory Committee's Note to 2015 Amendment; Cat3, LLC v. Black Lineage*, Inc., 164 F. Supp. 3d 488 (S.D.N.Y. 2016); *Thomas v. Butkiewicus*, No. 3:13-CV-747 (JCH), 2016 U.S. Dist. LEXIS 57163 (D. Conn. Apr. 29, 2016); *Thurmond v. Bowman*, No. 14-CV-6465W, 2016 U.S. Dist. LEXIS 45296 (W.D.N.Y. Mar. 31, 2016); *Best Payphones, Inc. v. City of N.Y.,* No. 1-CV-3934 (JG) (VMS), 2016 U.S. Dist. LEXIS 25655 (E.D.N.Y. Feb. 26, 2016).

Lastly, courts within the Second Circuit have utilized two different standards of proof when it comes to determining whether a party is guilty of spoliation of evidence—by a preponderance of the evidence, or by clear and convincing evidence. Where the court relies on its inherent power to impose sanctions, as opposed to authority grounded in statute or rule, it is more likely that clear and convincing evidence will be required. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000). Where the sanction sought is severe, such as case-terminating or otherwise punitive in nature, the higher standard is appropriate. *Cat3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488 (S.D.N.Y. 2016); *Thomas v. Butkiewicus*, No. 3:13-CV-747 (JCH), 2016 U.S. Dist. LEXIS 57163 (D. Conn. Apr. 29, 2016); *Thurmond v. Bowman*, No. 14-CV-6465W, 2016

U.S. Dist. LEXIS 45296 (W.D.N.Y. Mar. 31, 2016); *Best Payphones, Inc. v. City of N.Y.,* No. 1-CV-3934 (JG) (VMS), 2016 U.S. Dist. LEXIS 25655 (E.D.N.Y. Feb. 26, 2016). As stated, in adopting the 2015 Amendments to Rule, the Rules Advisory Committee rejected the standard set forth in *Residential Funding Corp.*, which authorized the giving of adverse inference instructions on a finding of negligence or gross negligence. Fed. R. Civ. P. 37(e)(2) *Advisory Committee's Note to 2015 Amendment*.

Essentially, Plaintiff has asked that the instant motion be decided on case law that is no longer controlling in this circuit.  Plaintiff has failed to identify the correct legal standard by omitting any mention of the revisions to Rule 37, nor any recent case law citing to the new and now controlling standard in its moving papers.

### A.   Plaintiff Argues that Defendants were Negligent, which Does Not Comply with the New Standard

Plaintiff seeks sanctions for spoliation of evidence based on Defendants' failure to preserve surveillance camera footage from the jail cell in which Plaintiff's incident occurred. Specifically, Plaintiff avers that he "has been deprived of this unique and critical evidence . . . through Defendants' actions and/or omissions," which suggests a negligence standard at best.  (*See* Pl's Memo., p. 8).  As mentioned above, under the new standard, negligence cannot be considered in spoliation motions pertaining to video surveillance such as the one at issue here.

In this case, any video recording depicting the February 28, 2015 incident was deleted pursuant to B.C.S. policy, wherein video footage was deleted after thirty (30) days. (**B.C.S. certification signed by Sergeant Sealy, annexed to Marquez Decl. as Exhibit A**).  As such, any video from B.C.S. generated on February 28, 2015, would have been destroyed on or around March 30, 2015.  Plaintiff, thus, cannot show the necessary culpable state of mind required to obtain sanctions against Defendants pursuant to the new standard because the video was deleted pursuant

to B.C.S. procedure and not to deprive Plaintiff of evidence.  Plaintiff's motion, therefore, should be summarily denied based on this new standard.

Notwithstanding this new standard, Defendants contend that Plaintiff's motion would nonetheless fail to comply with the old standard expressed in *Residential Funding Corp.* since he cannot show that Defendants were negligent or grossly negligent towards the preservation of the February 28, 2015 video.

### B.    Finding of Spoliation Would not be Warranted Even Under the Old Standard

Under the old standard, spoliation sanctions may be warranted if the Plaintiff shows: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed by Defendants and with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F.3d at 108 (internal quotation marks omitted).

Defendants argue that Plaintiff cannot meet the standard espoused in Residential Funding Corp. since: (1) no obligation to preserve the video evidence existed since litigation was not foreseeable because of Plaintiff's uncooperativeness in the criminal case; (2) the video recordings were not destroyed with a culpable state of mind, but rather pursuant to B.C.S. policy; and (3) Plaintiff cannot show that preservation of the video would have furthered his underlying claims and that Defendants had a duty to preserve.

### 1.    Plaintiff's Non-Cooperation During the Criminal Case of Luis Marte Made Civil Litigation Unforeseeable; Plaintiff's Reference to "a Number of Lawsuits" From Incidents Purportedly at B.C.S. is Insufficient to Make Litigation Foreseeable

"Th[e] obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation . . . [or] when a party should have known that the evidence may be relevant to future litigation." *Creighton v City of NY*, 2017 US Dist LEXIS 21194, at *43-44 (S.D.N.Y. Feb. 14, 2017) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

Defendants contend that Plaintiff's inaction in his criminal case necessarily forces the conclusion that civil litigation was not foreseeable. Consequently, Plaintiff cannot turn around and argue that, despite his uncooperativeness in the criminal litigation, civil litigation was foreseeable against *indirect* parties purportedly responsible for his harm.

The District Attorney File concerning the alleged criminal assault of Moshe Ungar against Luis Marte was produced pursuant to this Court's November 11, 2016 Order; a review of the District Attorney File reveals that the case dismissed pursuant to the "speedy trial provisions" of N.Y.C.P.L. § 30.30.  (**Relevant portions of District Attorney File, annexed to Marquez Decl. as Exhibit B**).  The records show that the Assistant District Attorney attempted to communicate with Plaintiff, but could not.[3]  The District Attorney records, therefore, reflect Plaintiff's failure to cooperate in the underlying criminal investigation.  Consequently, Plaintiff's lackadaisical attitude towards his underlying criminal case would not suggest that he intended to commence litigation on his own behalf after the conclusion of the criminal case .  In other words, Plaintiff's failure to cooperate in the criminal action against Mr. Luis Marte – the individual who actually harmed him – would suggest a lack of interest to pursue legal recourse against those allegedly – *and indirectly* – responsible for the alleged harm.  Thus, Plaintiff's allegation that Defendants had an obligation to

---

[3] Defendants note that Plaintiff has not attempted to depose the Assistant District Attorney who handled Plaintiff's criminal case, though the parties have discussed the need to conduct such deposition.

preserve the February 28, 2015 video because of "foreseeable" litigation against them is undermined by his own conduct as the complaining witness in the criminal case.

Lastly, Plaintiff cites various cases in his memorandum that he argues made litigation in *his* case foreseeable, which are the same cases relied upon him for his *Monell* discovery request at Docket Entry No. 48: *Charles Blake v. Kelly*, 2014 U.S. Dist. LEXIS 119090 (S.D.N.Y. 2014), *Keith v. City of New York*, 2014 U.S. Dist LEXIS 166469, *Poulos v. City of New York*, U.S. Dist. LEXIS 6301,[4] *Strano v. City of New York*, 1998 U.S. Dist LEXIS 9258, and *Bullard v. City of New York*, 240 F.Supp.2d 29.

Defendants first refer the Court to their Response in Opposition to Plaintiff's request for additional *Monell* discovery at Docket Entry No. 49, which distinguishes the applicability of the aforementioned cases to Plaintiff's case.  In said response, Defendants *actually analyze* the cases cited by Plaintiff and note how different the facts of these cases are to the case at bar.  For example, Plaintiff cites *Poulos*, which pertains to a default judgment against a non-appearing party because of an attack that happened at the Anna M. Kross Center ("A.M.K.C.") – *not* B.C.S.  As such, this case is wholly inapplicable and not a reliable source to argue that Defendants were "on notice" that litigation was foreseeable.  As another example, Plaintiff cites *Bullard*; this case, however, has nothing in common with Plaintiff's complaint since the *alleged* incident was at Bronx Central Booking - *not* B.C.S.  More importantly, however, Plaintiff primarily relies on the *allegations* made in these cases – not actual findings by the court of wrong doing.

Second, Defendants contend that Plaintiff cannot rely on such cases to adduce "foreseeability" of litigation in the spoliation context since the mere reliance on other litigation is not enough by itself.  *See Simms v. City of New York*, 480 Fed. Appx. at 630 (2d Cir. 2012) (citing

to another civil lawsuit does not state a claim for municipal liability because the fact of the lawsuit shows only that the allegation was made, "not that those violations actually occurred"). Accordingly, these clearly inapplicable cases cannot be relied upon by Plaintiff for the proposition that Defendants were "on notice" that litigation stemming from his incident at B.C.S. was foreseeable.

> **2.      Plaintiff Failed to Show that Defendants Had a Culpable State of Mind or a Duty to Preserve the February 28, 2015 video recording**

Defendants first reiterate that any video recording depicting the February 28, 2015 incident would have been deleted pursuant to B.C.S. policy, wherein video footage was deleted after thirty (30) days. Plaintiff, thus, cannot show the necessary culpable state of mind required to obtain sanctions against Defendants.  Either way, Plaintiff cannot hold each individual defendant liable since he has failed to show that each individual was responsible for the preservation of the February 28, 2015 video footage; in fact, Plaintiff acknowledges that none of them were.

Plaintiff cites *Manganiello v. City of New York*, 612 F.3d 149, 166 (2d Cir. 2010),[5] for the proposition that "[a] police department and its constituent officers have an obligation to preserve evidence obtained during the course of its criminal investigations in anticipation of a criminal trial" and that "failure to [preserve such evidence] will justify the imposition of spoliation sanctions in a subsequent civil lawsuit which alleges police misconduct." (Pl's Memo., p. 5). *Manganiello*, however, is an example of case entirely inapplicable to the case at bar since, in that matter, the detective was faulted for failing to preserve his *own* case file, which had been generated and stored solely by him.  Although Plaintiff is correct to note that spoliation sanctions may be

---

[4] The correct citation is 2016 U.S. Dist. LEXIS 6301.
[5] Defendants note that *Manganiello* pertained to spoliation sanctions against a detective who failed to preserve his *own* case folder, which was indisputably under his control.

appropriate against individuals or entities that had control and a duty to maintain documents or recordings, "[a spoliation sanction] is not appropriate where the [movant has not shown that the alleged spoliators had] 'any control over the [relevant] recordings, any duty to maintain them, or were in any way involved in the failure to preserve them.'" *Creighton*, 2017 US Dist LEXIS 21194, at \*43-44 (citing *Deanda v. Hicks*, 137 F. Supp. 3d 543, 556 (S.D.N.Y. 2015), and quoting *Grant v. Salius*, No. 09 Civ. 21, 2011 U.S. Dist. LEXIS 133248, 2011 WL 5826041, at \*2 (D. Conn. Nov. 18, 2011)).

Here, Plaintiff has not shown that each individual capacity defendant was responsible for the preservation of video evidence from February 28, 2015.  This is particularly important to highlight when the harm to Plaintiff was caused by a fellow arrestee and not a New York Police Department ("N.Y.P.D.") employee, which diminishes the foreseeability that the individual capacity defendants had to act to preserve the video.  Inclusively, Plaintiff references deposition testimony of Police Officer Albert Robles that confirms that Officer Robles did not have control over the video recordings, nor a duty to preserve. (Pl's Memo., p. 7).[6]  Plaintiff, thus, cannot argue that an adverse inference should be held against these individual officers – to their detriment – when preservation of video was never within the purview of their functions.

As will be explained in the next section, Plaintiff testified that the only "identifiable" officers that walked past his cell were African American male police officers, which

---

[6] Plaintiff states that Officer Robles "was questioned regarding whether any video existed of the incident at issue" and "denied all knowledge of the video and testified that it 'would not be his job' to view the footage." (Pl's Memo., p. 4).  Plaintiff refers to the Complaint Room Screening Sheet that is consistent with Officer Robles's testimony that he believed that a video of the incident appears to have existed at the time, though he did not personally view said video.  In addition, Plaintiff refers to Defendants' response to a document demand for the video. (Id.)  Both Officer Robles's deposition testimony and the response to Plaintiff's document demand are consistent with representations made throughout the course of this litigation: although the video existed at some point, no video recording of the February 28, 2015 presently exists or is in Defendants' possession.

automatically precludes from liability defendants Albert Robles, Yandei Peralta, Raymond Gonzalez, Michael Victoria, and Roman Franklin. Accordingly, Plaintiff's own admission impedes liability against these officers because they lacked any personal involvement in his alleged and indirect harm. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (noting that personal involvement means "direct participation"). Plaintiff, therefore, cannot show "personal involvement" by these officers with respect to his underlying claims, which means that an adverse inference against these officers with respect to the video would be entirely improper and unduly prejudicial. *See* Fed. R. Evid. 403.

In this case, Police Officer Jason Whyte is the only African-American named defendant and, consequently, the only named defendant that could be held *theoretically* liable. However, even if we assume Officer Whyte is one of the two African American officers referenced by Plaintiff, Plaintiff cannot show that Officer Whyte had control over the video surveillance system or had a duty to preserve the February 28, 2015 video recording. Thus, a motion for spoliation sanctions against Officer Whyte cannot prevail and – if anything – would unduly prejudice Officer Whyte.

Lastly, Plaintiff relies on the fact that he submitted a notice of claim on May 14, 2015, for the proposition that he placed the Defendants on notice to preserve the video recording. In other words, the mere filing of his notice of claim served as an automatic *carte blanche* preservation request. Even if we assume that the notice of claim served as an automatic *carte blanche* preservation hold (which we do not), Defendants explained at the February 15, 2017 status conference that the video was destroyed well before Plaintiff's notice of claim filing, which means

that the notice would not have had any bearing on the preservation of the video.[7]   Accordingly, Plaintiff cannot show that any of the Defendants should be held liable for spoliation.

### 3.   Plaintiff Failed to Show that the Video Evidence would have Corroborated His Version of Events and Furthered His Failure to Intervene and Failure to Protect Claims

"[W]hen the destruction [of evidence] is negligent, relevance must be proven by the party seeking the sanctions." *Deanda*, 137 F. Supp. 3d at 555 (internal quotation omitted).  When a party alleges negligence or gross negligence, the plaintiff "has the burden of proving that the allegedly lost evidence was relevant to his claims."  *Id.* "A party seeking sanctions for negligent spoliation must demonstrate that the destroyed, altered, or lost evidence 'was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Creighton*, 2017 US Dist LEXIS 21194, at *43 (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)).  While "[c]ourts must take care not to 'hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence. . . , a party seeking spoliation sanctions for negligent conduct must show through extrinsic evidence that the destroyed evidence would have been favorable to [his] case" and that inability to show that the "destroyed evidence would have been helpful in proving a claim or defense, more severe sanctions such as an adverse inference are not warranted."  *Creighton*, 2017 US Dist LEXIS 21194, at *55-56 (internal citations and quotations omitted) (citing *De Espana v. Am. Bureau of Shipping*, No. 03 Civ. 3573 (LTS) (RLE), 2007 U.S. Dist. LEXIS 41498, 2007 WL 1686327, at *6 (S.D.N.Y. June 6, 2007) ("[W]here the culpable party was negligent,

---

[7] Defendants, however, underscore that, even if a Notice of Claim would have been filed before the thirty (30) day destruction date, such filing – by itself – would not have been enough to make litigation foreseeable.  If anything, a "preservation hold" request, filed concomitantly with the Notice of Claim, would have bolstered Plaintiff's argument that notice was effectuated, though even this act may not be enough in

Continued…

there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party."). "**This corroboration requirement is . . . necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him**." *Great N. Ins. Co.*, 2007 U.S. Dist. LEXIS 66798, 2007 WL 2687666, at *11 (emphasis added).

Plaintiff alleges that Luis Marte was "irate and belligerent for approximately ten to fifteen minutes before striking Plaintiff" and that "Marte uttered a string of anti-Semitic invective clearly targeted at Plaintiff." (Pl's Memo., p. 8). Plaintiff asserts that "Defendants took notice of Marte's behavior, but neglected to intervene beyond telling him to 'sit down.'" (Id.) Plaintiff adds that he "did nothing to provoke Marte." (Id.) Perplexedly, Plaintiff makes the statement that "[w]hen the case at bar proceeds to trial, at the forefront of the jury's minds will be the question of just how loud and belligerent Marte was in the period leading up to the attack, just how apparent the danger he presented was"; Plaintiff, however, does not show that the February 28, 2015 video recording would have had audio recording as well. Assuming all of Plaintiff's aforementioned factual statements are true, Defendants add the following undisputed facts arising from Plaintiff's deposition testimony to show that the aforementioned video would not have helped his case.

Plaintiff testified that he fell asleep in the same jail cell in which the incident happened and that he was woken up by Luis Marte's statements. (**Plaintiff's Deposition Transcript ("Pl's Dep."), annexed to Marquez Decl. as Exhibit C, p. 49:16-17**). Plaintiff had been in this same jail cell for approximately 13-14 hours before being awakened by Luis Marte.

---

certain cases. Here, Plaintiff never submitted such preservation letter with his Notice of Claim, which severely diminishes the strength of his argument.

(Pl's. Dep., pp. 51-52).  The only statements purportedly made by Luis Marte were that "Jewish people have money, nice cars, that stuff" (Pl.'s Dep., p. 49:16-17), "all this stuff that Jewish people have nice cars." (Pl's Dep., p. 50:8-14).  Plaintiff testified that these statements were made for approximately 10-15 minutes and that an African American officer walked by the cell and told Luis Marte to "sit down and shut up." (Pl's Dep., p. 53:15-17; p. 54:1-13; p. 55:19-24).  Plaintiff added that Luis Marte banged on the wall at some point.  (Pl's Dep., p. 106:14-25; p. 107:1-25; p. 108: 1-8).  Plaintiff stated that in these 10-15 minutes, he did not say anything to any police officer, nor does he remember other inmates saying anything to the police officers.  (Pl's Dep., p. 55:8-18).  Plaintiff does not remember Luis Marte sitting down and complying with these alleged orders. (Pl's Dep., p. 56:18-24).  Plaintiff alleges that he was punched ***once*** and without having provoked Luis Marte.  (Pl's Dep., p. 58:21-25).

So, assuming all of these facts are true and are depicted in the video, the central question that we have concerning the instant motion is whether the aforementioned facts would have been reflected in the video and would have been beneficial to Plaintiff's case or detrimental to Defendants; the answer is unquestionably *no* for the following reasons.

First, assuming the video existed, the same did not have audio recording, which means that the alleged statements could not be heard.  Given that Plaintiff substantiates his allegations on the content of Luis Marte's statements, the inability to play such audio would have nevertheless have existed even if the video had been preserved.

Second, Plaintiff does not remember whether or not Luis Marte was complying with the officers' orders to "sit down and shut up," which means that it is unknown whether the video recording would show Luis Marte complying with such orders.  Furthermore, Plaintiff admits that

he did not say anything to the officers during Luis Marte's alleged tirade, which makes it highly doubtful that an attack was imminent and foreseeable.

Third, even if the aforementioned facts would have been reflected in the video, Plaintiff failed to explain or show that they would be relevant to furthering his failure to intervene and failure to protect claims.

Defendants note that Plaintiff's failure to intervene claim requires him to prove that a police officer must have had "a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

Plaintiff admits that he was only punched ***once***, which is not enough to substantiate a failure to intervene claim. *See Stewart v. Schiro,* No. 13-cv-3613, 2015 U.S. Dist. LEXIS 52962, 2015 WL 1854198, at * 2 (E.D.N.Y. Apr. 22, 2015) (dismissing the plaintiff's Section 1983 failure to intervene claim where, inter alia, the fight between the two inmates lasted only one (1) to two (2) minutes); *see also Blake v. Base*, 90-CV-0008, 1998 U.S. Dist. LEXIS 14659, 1998 WL 642621, at *13 (N.D.N.Y. Sept. 14, 1998) (McCurn, J.) (dismissing failure-to-intervene claim against police officer based on finding that the punch to the face and few body blows that plaintiff allegedly suffered "transpired so quickly . . . that even if defendant . . . should have intervened, he simply did not have enough time to prevent plaintiff from being struck").

Here, Plaintiff's admission that he was punched once is enough to dismiss his failure to intervene claim. Thus, even if the video were produced, the same would not show a cognizable failure to intervene claim, which precludes spoliation sanctions.

With respect to Plaintiff's failure to protect claim, the Plaintiff must show that the Defendants acted with deliberate indifference. *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). In *Darnell*, the Second Circuit reaffirmed that "mere negligence" is not enough to prevail in a 42

U.S.C. § 1983 action since "any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence." *Darnell*, 849 F.3d at 41 (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472, 192 L. Ed. 2d 416 (2015)).  Consequently, a pretrial detainee "must prove that an official acted intentionally or recklessly, and not merely negligently." (*Id.*)

The video recording does not have audio.  As a result, the statements purportedly made by Luis Marte will not be reflected in the video, which implies that the video recording would not have aided Plaintiff's failure to protect claim since his argument is primarily substantiated on the content of Luis Marte's statements as putting the unidentified officer "on notice" that an attack was going to occur.  On the other hand, it is particularly damning to Plaintiff's underlying claim that he admits that he did not complain to a police officer over what was occurring, which severely weakens any argument that the one-punch-attack was foreseeable in this 10-15 minute window and that *any* Defendant could be found to have been reckless in preventing harm.  Moreover, the statements "Jewish people have money, nice cars, that stuff" and "all this stuff that Jewish people have nice cars" is not indicative that an attack is imminent and foreseeable, which means that – even if we assume all these facts are true – a defendant officer cannot be held liable for unforeseeable acts.  As such, Plaintiff cannot show that he is entitled to spoliation sanctions since it cannot be said that the video recording would have been helpful to his failure to protect claim.

Lastly, Defendants add that Luis Marte indicated that Plaintiff "was right next to me, he took out his penis so I punched him," which would indicate that Plaintiff unreasonably provoked Luis Marte to commit the physical aggression against him and that this was not some

"random" act by Luis Marte against Plaintiff.[8]  (**Complaint Room Screening Sheet, annexed to Marquez Decl. as Exhibit D**).

If the video existed, this action purportedly committed by Plaintiff could have been reflected in the video, which would blow his claim out of the water.  Consequently, Plaintiff cannot show that preservation of the February 28, 2015 video would have furthered any of his purported constitutional violations.  *See McGinnity v. Metro-N. Commuter R.R.*, 183 F.R.D. 58, 63 (D. Conn. 1998) (declining to give adverse inference instruction where "all parties [were] equally prejudiced by the absence of the tape recording" and "complete discovery [was] conducted by all parties in the absence of the tape recording").  *Both parties*, therefore, must litigate this case with whatever discovery is available to them.

## C.   The parties are attempting to contact potential witnesses; the fact that no witness has been identified cannot serve as a basis to grant a spoliation motion

Plaintiff states that he "did not did not learn the names of any other inmates in the cell" and that because "Defendants have failed to disclose the names of such witnesses, the surveillance camera is effectively the only disinterested witness to the incident."  (Pl's Memo., p. 9).  Again, Plaintiff purposefully paints himself ignorant of the fact that the video surveillance was destroyed in a thirty (30) day period instead of ninety (90) days, which was corrected by Defendants and noted to Plaintiff's counsel, David Zelman, multiple times.

Regardless of whether individual witnesses could be identified, the destruction of the video does not impede Plaintiff from litigating his case. *See United States v. Ungar*, 648 F. Supp. 1329, 1335 (E.D.N.Y. 1986) (recognizing that: (1) "government destruction of exculpatory evidence violates due process only if the exculpatory value of the material was apparent before the

---

[8] Luis Marte has not been deposed.  Nevertheless, Defendants will make an application to the Court to Continued…

material was destroyed, and if the nature of the material was such that the defendant would not be able to obtain comparable evidence by other reasonable available means"; and (2) liability for the destruction of the documents should not be found if it was done in the ordinary course of business and not in bad faith).  Moreover, Plaintiff did not first attempt to contact witnesses until *this* year (i.e., 2017).  If anything, this type of discovery should have been pursued soon after the filing of the first complaint on October 22, 2015.  Nevertheless, Plaintiff *chose* not to pursue this course of action and Defendants are not expected to guess Plaintiff's litigation strategy.  Although true that Defendants could not identify specific witnesses located in Plaintiff's cell during the assault, this is because B.C.S. does not keep track of the movement of individuals in between cells.  In addition, the parties have conferred with respect to sending letters to potential witnesses pursuant to this Court's February 15, 2017 Order; Plaintiff communicated that he would be mailing a letter to these potential witnesses.  Plaintiff, thus, cannot argue in good faith that the parties' inability to identify witnesses should somehow factor into adverse consequences for *any* party, especially when Plaintiff waited until 2017 to contact potential witnesses.

### POINT III

### PLAINTIFF REQUESTS SANCTIONS THAT ARE DISPROPORTIONATE AND UNDULY PREJUDICIAL TO DEFENDANTS

The Second Circuit has stated that "'a case by case approach [is] appropriate' to determine whether an adverse inference [or some other sanction] is warranted." *Deanda*, 137 F. Supp. 3d at 555 (quoting *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001)); *see also Adorno v. Port Auth.*, 258 F.R.D. 217, 227 (S.D.N.Y. 2008) ("[D]etermining the proper sanction to impose for spoliation is 'confined to the sound discretion of the trial judge . . . and is

---

attempt to contact him in order to hold his deposition.

assessed on a case-by-case basis.'") (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

Plaintiff moves to strike Defendants' answer to the complaint "as the appropriate sanction to remedy this purported spoliation."  (Pl's Memo., p. 9).  In the alternative, Plaintiff moves the court "to provide a jury instruction, wherein it is 'presume[d] that the spoliated evidence would have supported plaintiff's version of events, and that their absence should – or at the very least may – be deemed as evidence that the Defendants acted negligently when they left Plaintiff alone in Central Booking.'" (Id.)

Defendants contend that Plaintiff's negligence argument is enough by itself to preclude striking Defendants' answer and granting default judgment, which would be unreasonable in this case.  As such, Defendants focus on Plaintiff's contention that a jury instruction with an adverse inference is merited in the instant case.

First, as discussed above, Plaintiff failed to show that *any* of the Defendants had control over the February 28, 2015 video recording and had an obligation to preserve it at any time. Plaintiff, thus, fails to meet the first prong.

Second, as explained, the February 28, 2015 video recording was deleted pursuant to B.C.S.'s thirty (30) day deletion policy.  Accordingly, Plaintiff cannot blame any of the Defendants for the video's destruction or prove that the video was destroyed with a culpable state of mind.  Plaintiff therefore fails to meet the second prong.

Lastly, as explained above, Plaintiff cannot show that the video recording – although potentially relevant – would have supported his underlying claims.  In other words, and for the reasons previously expressed, the video would not have corroborated Plaintiff's version of events, especially in light of his description of how the altercation occurred.  Furthermore, the alleged

aggressor, Luis Marte, communicated that Plaintiff provoked him, which would destroy Plaintiff's argument that he was attacked for "no reason" other than being of the Jewish faith.  Consequently, Plaintiff cannot meet the third prong since he cannot show that the video recording would have substantiated his failure to intervene and failure to protect claims, nor can he show that the video would have been harmful to the Defendants' case.

**POINT IV**

**PLAINTIFF'S ATTORNEY IS NOT ENTITLED TO ATTORNEY FEES**

Plaintiff requests attorneys' fees in connection with the filing of his motion. Defendants disagree that Plaintiff should be entitled to attorneys' fees.

Plaintiff failed to confer in good-faith under Local Civil Rule 37.3 so as to properly target the contents of his motion.  Plaintiff misrepresented Defendants' statements as well as documents furnished to Plaintiff by Defendants.  Plaintiff cited irrelevant case law that does not bolster his spoliation claim.  In addition, Plaintiff filed the instant motion without attempting to depose multiple parties, such as the assistant district attorney that handled the underlying criminal investigation, the aggressor, Luis Marte, or potential witnesses.

Accordingly, there are multiple reasons to deny Plaintiff's request for attorneys' fees in light of the fact that: (1) the motion does not proceed as a matter of law; and (2) Plaintiff's filing of this motion was premature, improper, and misrepresented various facts.

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's Motion for Spoliation Sanctions should be

denied in its entirety and without leave to re-file.


Dated: New York, New York
April 10, 2017

ZACHARY W. CARTER
Corporation Counsel of the
 City of New York
*Attorney for Defendants City of New York, Robles,*
*Gonzalez, Peralta, Whyte, Franklin, Victoria*
100 Church Street, Room 3-126
New York, New York 10007
(212) 356 - 2336


By: _____/s/_____
                 Jorge Marquez
                 *Assistant Corporation Counsel*
                 Special Federal Litigation Division

24