UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

MOSHE UNGAR,                                        Case No. 15-cv-6091
                                    Plaintiff

-against-

CITY OF NEW YORK, et al
                                    Defendants
_____X


_____
**PLAINTIFF'S OBJECTIONS TO MAGISTRATE VERA M.
SCANLON'S ORDER DATED FEBRUARY 16, 2018**
_____



LAW OFFICE OF DAVID ZELMAN

ATTORNEY FOR PLAINTIFF MOSHE UNGAR

612 EASTERN PARKWAY

BROOKLYN NEW YORK 11225

## PRELIMINARY STATEMENT

Plaintiff Moshe Ungar submits this memorandum of law in support of his motion for an order (1) vacating the Magistrate's Order dated February 16, 2018 denying any form of spoliation sanctions, (2) striking defendants' Answer, and/or (3) directing that an adverse inference be awarded at trial and/or (4) lightening plaintiff's liability burden at the time of trial as argued in plaintiff's reply brief, page 10, citing, *McEachron v. Glans*, 98-CV-17 (LEK/DRH), 1999 U.S. Dist. LEXIS 21928, at *10 (N.D.N.Y. Aug. 25, 1999) and awarding plaintiff costs and attorney's fees for the instant spoliation motion practice, hearing and appeal to this Court and for any and all relief deemed appropriate and just by this Court.  The instant motion should be granted since the within Defendants spoliated critical evidence that they were obligated to preserve for the purpose of foreseeable litigation. The most significant evidence in this case, to wit a video recording of the incident giving rise to Plaintiff's claim, has been spoliated by Defendants. The Defendants did nothing to seek to preserve any of the video footage from Kings County Central Booking from the date of the incident, and in fact allowed it to be spoliated despite notice that it was relevant to both a pending criminal matter and this civil matter.

The Defendants' failure to preserve critical evidence is sufficiently grave that the appropriate sanction is to strike their answer, enter a default judgment in Plaintiff's favor as to liability, and convene a jury for the purpose of assessing damages only. Alternatively, lesser sanctions – such as a mandatory or permissive adverse inference charge – should be imposed.

## STANDARD OF REVIEW

With respect to a ruling of a magistrate judge on a pre-trial non-dispositive matter,  a

1

district court shall "modify or set aside any portion of the magistrate's order found to be clearly

erroneous or contrary to law." Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A) ("A judge

of the court may reconsider any [nondispositive] pretrial matter . . . where it has been shown that

the magistrate's order is clearly erroneous or contrary to law."). Matters involving pretrial

discovery generally are considered nondispositive of the litigation and are subject to the "clearly

erroneous or contrary to law standard." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522,

525 (2d Cir. 1990). The Supreme Court has stated that a finding is "clearly erroneous" when,

"although there is evidence to support it, the reviewing court on the entire evidence is left with

the definite and firm conviction that a mistake has been committed." *United States v. United*

*States Gypsum Co.*, 333 U.S. 364, 394, 92 L. Ed. 746, 68 S. Ct. 525 (1948) (quoted in *Derthick*

*v. Bassett-Walker Inc.*, 1992 U.S. Dist. LEXIS 14505, Nos. 90 Civ. 5427, 90 Civ. 7479, 90 Civ.

3845, 1992 WL 249951, at *8 (S.D.N.Y. 1992)). "[A] party seeking to overturn a

discovery ruling [therefore] generally bears a heavy burden." *Com-Tech Assocs. v. Computer*

*Assocs. Int'l, Inc.*, 753 F. Supp. 1078, 1099 (E.D.N.Y. 1990). "Pursuant to this highly deferential

standard of review, magistrates are afforded broad discretion in resolving discovery disputes and

reversal is appropriate only if their discretion is abused." *Lanzo v. City of N.Y.*, 1999 U.S. Dist.

LEXIS 16569, No. 96- CV-3242, 1999 WL 1007346, at *2 (E.D.N.Y. Sept. 21, 1999) (quoting

Derthick, 1992 U.S. Dist. LEXIS 14505, 1992 WL 249951, at *8).  *Kanyi v. United States*, 99

CV 5851 (ILG), 2001 U.S. Dist. LEXIS 19814, at *4-6 (E.D.N.Y. Nov. 5, 2001)

## FACTUAL OVERVIEW

On or about February 28, 2015, at approximately 4:45 p.m., Plaintiff Moshe Ungar was

an arrestee inside Kings County Central Booking. (Defense disclosures, hereinafter "Pl. Ex. A,"

D 21). Plaintiff was seventeen years old. (Pl. Ex. A, D 21)[1]. Plaintiff had been arrested for assault and the matter was soon thereafter dismissed. (Pl. Ex. A, D 7). Plaintiff was dressed in Chasidic clothes and noticeably religious. (EBT Ungar, hereinafter "Pl. Ex. B," p. 58 line 1-6). Plaintiff was confined in Female Cell #8. (Pl. Ex. A, D 1). Plaintiff was confined with approximately 15 to 20 inmates. (Pl. Ex. C, p. 14-15). Plaintiff was confined to Female Cell #8 for approximately 13-14 hours, but did not learn the names of the other inmates. (Pl. Ex. B, p. 48 lines 7-12).

Plaintiff was sitting on a bench when another inmate, Luis Marte, launched into an anti-Semitic tirade, complaining about Jewish people having "money" and "nice cars." (Pl. Ex. B, p. 49 lines 19-23). Marte was irate and struck the walls of the cell. (Pl. Ex. B, p. 108 lines 3-15). This went on for approximately ten to fifteen minutes. (Pl. Ex. B, p. 55 lines 1-4). Plaintiff remained sitting on the bench and ignored Marte. (Pl. Ex. B, p. 50 lines 12-14). A guard outside the cell told Marte to "sit down" or words to such effect, but took no other action. (Pl. Ex. B, p. 55 lines 19-24). Without provocation, Marte punched Plaintiff in the face. (Pl. Ex. A, D 1) (Pl. Ex. B, p. 57 lines 7-9). Plaintiff was knocked unconscious by the punch. (Pl. Ex. B, p. 59 lines 3-4). Other inmates called out and Defendant Gonzalez removed Marte and Plaintiff from the cell. (EBT Gonzalez, hereinafter "Pl. Ex. C," p. 13 lines 9-12)

Plaintiff suffered severe injury to his jaw, lost a tooth and was unable to eat solid food for a period of eleven weeks. (Pl. Ex. B, p. 100 lines 7-25). Plaintiff was prescribed medication but was unable to take it because his injury prevented him from opening his mouth. (Pl. Ex. B, p. 99 line 13 – p. 100 line 15). Plaintiff required multiple oral surgeries. (Pl. Ex. B, p. 81 lines 12-24).

---

[1] All references to exhibits are to the exhibits of the underlying motion for spoliation including exhibits annexed to plaintiff's reply brief.

Plaintiff commenced suit on October 21, 2015, and claimed Defendants' failed to protect the infant plaintiff from foreseeable harm in that Defendants failed to intervene in the developing situation and violated Plaintiff's Due Process and Eighth Amendment rights to be free from foreseeable harm. Plaintiff styled his complaint with reference to *Blake v. Kelly*, which is a similar matter involving a prior assault at Kings County Central Booking. (See *Blake v. Kelly*, 2014 U.S. Dist. LEXIS 119090 (S.D.N.Y. 2014)).

Prior to instituting this action, Plaintiff duly served a Notice of Claim upon Defendant City of New York, 75 days after the incident. (See eCLAIM receipt annexed as Pl. Ex. D). Following joinder, Plaintiff served upon Defendants Document Demands requesting, *inter alia*, "any video recordings relevant to the incident/arrest, the aftermath or immediately before the incident." (See Pl. Doc. Demands, ¶24). Defendants responded by objecting to the demand on the grounds that, *inter alia*, Defendants were "unaware of video recordings that were relevant or showed the event." (See Def. Resp. p.15). Following the exchange of documentary discovery, the arresting officer Alfred Robles testified at deposition. Robles was questioned regarding whether any video existed of the incident at issue. Robles denied all knowledge of the video and testified that it "would not be his job" to view the footage. (EBT Robles, hereinafter Pl. Ex. E," p. 18 line 19 – p. 19 line 18). Thereafter the Plaintiff demanded and received the District Attorney file of the underlying incident, in which Officer Robles informed the District Attorney that there was "video surveillance of the incident." (See Kings County DA File, hereinafter "Pl. Ex. F," D341). Following the receipt of the information that there was video of the incident, the matter was discussed with Magistrate Judge Scanlon who ordered Defendants to produce an affidavit attesting to the whereabouts of this video of the incident. (See Order annexed as "Pl. Ex. G").

In March of 2016 Defendants produced a certification from the Commanding Officer of NYPD's Brooklyn Court Section, William J. Tobin, stating in relevant part: "in response to the request for surveillance footage … the undersigned is submitting a negative response. This is due to the fact that the DVR device used for surveillance only stores video for 90 days. After 90 days it records over the previous video." (See Certification annexed as Pl. Ex. H). Months after this certification was submitted, Plaintiff's counsel received a call from defense counsel, Mr. Marquez, indicating his belief that the certification was inaccurate, in that the video was apparently destroyed prior to the expiration of 90 days.  A second certification was then received indicating that the video recording was erased after 30 days.   To date, Plaintiff's counsel has never viewed or received the video which existed on the date of the incident.

The hearing in this matter established that while the District Attorney's office made a note to request the video, there is no indication that it was followed through on.  None of the individual defendants made any effort to preserve the video, despite the fact it is admitted that the video would have showed the incident. (See Exhibit  L annexed to plaintiff's Reply Brief, Deposition of Yandeiry Urbanek, pages 36, line 21, page 37, line 12)  The video was allowed to be erased over while the criminal matter was pending against Mr. Marte for the within assault thirty days after the assault.

## ARGUMENT

I.    The Magistrate Correctly Found That the Defendants Had An Obligation To Preserve The Evidence That Was Spoliated

It should be pointed out, that the Magistrate correctly determined that the City of New York had an obligation to preserve the video evidence of the assault.  The Magistrate held, "…the Court agrees that the duty to preserve evidence attached when the Assault occurred because

plaintiff was in police custody." (Magistrate decision dated February 16, 2018, p. 11)  The

Court explains its reasoning that it was forseeable that litigation would result due to the assault.

The Magistrate went on to cite a case relied upon by plaintiff, *Taylor v. City of New York* 293

F.R.D. 601, 611 (S.D.N.Y. 2013), a nearly identical case to the within matter analyzing nearly

identical issues of spoliation.  As argued above, the video evidence was erased despite the fact

that there was an ongoing criminal prosecution of the person who struck the plaintiff in Central

booking.  Therefore, this spoliation of video evidence affected two separate legal actions, the

criminal matter against Mr. Marte and the current civil matter.  Therefore, it was appropriate for

the Magistrate to find that the duty to preserve the video of the incident attached at the time of

the incident.

> II.     The Magistrate Incorrectly Assumed The Burden Of Demonstrating Relevance Is
>         <u>Borne Solely By The Plaintiff and that the destroyed Video Was Not Shown To Be
>         Relevant To Plaintiff's Claims</u>

As an initial matter, the Magistrate took pains to explain the applicability of the amended

FRCP 37(e) to this action without correctly analyzing the timeline.  Amended Rule 37(e) took

effect on December 1, 2015 and all of the incidents at issue, the underlying assault, the

destruction of evidence and the filing of the complaint in this case occurred prior to that date.

The Magistrate apparently was mistaken when she found otherwise. (Magistrate's Order dated

February 16, page 8). Under these circumstances, Courts have taken the approach that it is

necessary to analyze whether the Amended FRCP 37(e) should apply to the facts of this case.

See, *Thomas v. Butkiewicus*, No. 3:13-cv-747, 2016 U.S. Dist. LEXIS 57163, 2016 WL

1718368, at*7 (D. Conn. Apr. 29, 2016) *DiStefano v. Law Offices of Barbara H. Katsos, PC*,

2017 U.S. Dist. LEXIS 72137, *12-13, *Hadiyah v. City of New York*, 12-CV-6180, 2017 U.S.

Dist. LEXIS 17943, 2017 WL 530460, at *26-*27 (E.D.N.Y. Feb. 7, 2017), *Learning Care*

*Group, Inc. v. Armetta*, 315 F.R.D. 433, 440 (D. Conn. 2016).  The Magistrate went on to find

that since plaintiff had not demonstrated that defendants intentionally, rather than negligently,

allowed the video of the incident to be erased, plaintiff had not met his burden of establishing

defendant's intent and therefore sanctions were not warranted under Amended Rule 37(e).  (See

Magistrate decision, p. 14) The Court later determined that plaintiff had failed to show that

defendants deleted the video evidence with the "intent to deprive."  (See Magistrate decision, p.

14)  Finally, the Magistrate determined that "Plaintiff has failed to establish that the deleted

surveillance video would not constitute evidence favorable to Plaintiff…"

   The error with this analysis and as argued to the magistrate, plaintiff does ***not*** have the

burden of demonstrating the relevance of deleted video evidence, the burden of demonstrating its

lack of relevance is on the party which destroyed the evidence.  See Plaintiff's Brief in Support,

p. 4-5 citing *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507 (S.D.N.Y. 2013).  Amended

Rule 37(e) also provides that the burden of establishing prejudice is **not** placed upon the moving

party alone which was done in this case where the magistrate held "Plaintiff has not shown that

he is prejudiced by its destruction" (See Magistrate decision, page 16)  Amended Rule 37(e) was

explained in *Snider v. Danfoss, LLC*, No. 15 CV 4748, 2017 U.S. Dist. LEXIS 107591, at *10-12

(N.D. Ill. July 12, 2017):

> Obviously, establishing prejudice is tricky business. All involved — the court, the party
> that failed to preserve, and the seeking party — are at a disadvantage because none know
> precisely what the lost ESI contained or showed. It is difficult for a court to determine
> prejudice when the ESI no longer exists and cannot be viewed. Likewise, it is difficult for
> the party that failed to preserve the ESI to show the absence of prejudice, again because
> the ESI was lost. Of course, this party is inclined to minimize the prejudice and
> importance of the lost ESI. And similarly, it is difficult for the party that seeks the ESI to
> establish prejudice because it does not know what was contained in the ESI. This party is
> predisposed to over emphasize the prejudice and importance of the lost ESI. The
> Advisory Committee Notes recognize this dilemma but offer no solutions:

The rule does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in some such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases. Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendments. To evaluate prejudice, the court must have some evidence regarding the particular nature of the missing ESI. *Eshelman*, 2017 U.S. Dist. LEXIS 87282 at *16.

See also, *IBM v. Naganayagam*, 2017 U.S. Dist. LEXIS 192625, at *15-17 (S.D.N.Y. Nov. 21, 2017) again explaining that Amended Rule 37(e) does not place any burden on the non spoliating party:

> While Rule 37(e) does not necessarily place the burden of proving or disproving prejudice on any particular party, requiring the moving party to prove prejudice may be reasonable in situations where "the content of the lost information is fairly evident, the information [] appear[s] to be unimportant, or the abundance of preserved information [] appears sufficient to meet the needs of all parties." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Here, the content of the allegedly spoliated emails and documents is fairly evident—or could have become evident with relatively little effort—yet Defendant has failed to establish how he has been prejudiced by their alleged loss. During her deposition, Lisa Caldwell, whose emails are at the center of Defendant's spoliation claims, merely stated that she had sent and received e-mail correspondence relating to Defendant's departure from IBM. (Sumner Decl., Ex. H, Lisa Caldwell Dep. 27:8-28:22). As United States Magistrate Judge Lisa Margaret Smith aptly noted in her December 9, 2016 Decision and Order, "[d]espite Defendant's ability to depose Caldwell regarding the content of these e-mails, Defendant has failed to provide the Court with any deposition testimony by Caldwell to the effect that the e-mails contained discussions of whether IBM and CSC are competitors." *Naganayagam*, No. 15-CV-7991 (NSR) (LMS), 2016 U.S. Dist. LEXIS 192141, *13. Without such testimony, Defendant fails to establish how or why the alleged spoliation of these emails is prejudicial to him. Thus, the imposition of spoliation sanctions in connection with these emails is unwarranted.

In the present matter, the evidence lost was established to be critical and irreplaceable. There was no dispute below that there was video evidence of how the assault actually occurred as this fact was made clear on the date of the incident to the District Attorney's office.  There

was no dispute that there was a camera in the cell and in the hallway in which the assault

occurred.  There was no dispute that the camera would have captured the assault and the

occurrences before and after the assault. (See Exhibit  L annexed to plaintiff's Reply Brief,

Deposition of Yandeiry Urbanek, pages 36, line 21, page 37, line 12)  This evidence was and is

irreplaceable in the context of this case and without a sliver of a doubt, would have been the

most crucial evidence in this case.  There was no evidence to substitute it or to piece it together,

it is completely gone and lost forever.  The only evidence left in this case is testimony.  Mr,

Marte, the assaulter was never available for a deposition in this case.  The individual

defendants, who were deposed, all denied witnessing the assault and could only testify to its

aftermath.  Only the infant plaintiff, who had just sustained a fracture to his jaw while sitting on

a bench in Central booking was able to testify as to the parameters of the unprovoked assault.

There can be no legitimate question in this case that the video surveillance of the actual assault,

which defendants admitted would have been captured on the video, would have been central,

unimpeachable and  the most relevant evidence of plaintiff's claims in this case.

The magistrate erred by squarely placing every burden on the plaintiff to demonstrate

defendants' intent or lack thereof, the relevance of the spoliated evidence and the prejudice

which plaintiff suffered.  These burdens are not plaintiff's to bear. It is in fact obvious in the

context of this case that the spoliated evidence was extremely relevant and irreplacable, to say

the least, and its loss was highly prejudicial as plaintiff has no effective method to convince a

jury of what transpired on the night in question without the video evidence.  Defendants will

invariably argue that plaintiff is an interested witness as he stands to be awarded damages if the

jury rules in his favor, however, the video itself is unbiased and unimpeachable testimony to the

occurrence at issue.  To find that this evidence is not relevant to this matter or that its loss is not

prejudicial to the plaintiff is manifestly wrong.  This finding also ignores the directly on point

case cited by plaintiff in his motion and by the Magistrate,  *Taylor v. City of New York*, 293

F.R.D. 601, 609 (S.D.N.Y. 2013).  *Taylor* is an almost identical case, where the defendants did

in fact retain the critical portions of the video, i.e four minutes of the assault itself, but not all of

the available video and District Court held:

> Defendants argue that, even if they did have a duty to preserve the video surveillance
> footage, they met this duty by preserving what they describe as the only two four-minute
> segments of "relevant" footage. (See Defs.' Mem. at 5.) Defendants' argument, however,
> misconstrues the scope of "all relevant evidence" under the reasonable anticipation of
> litigation standard. Under the DOC's video preservation policy, DOC officers are required to
> make "available video recorded evidence of incidents" in order "to enhance the investigation
> process of Use of Force and Unusual Incidents." (Rosenfeld Decl. Ex. E.) Defendant
> Brantley testified that, pursuant to this policy, she saved only the footage that depicted "the
> actual unusual incident" when Boyce punched Plaintiff, and "the actual use of force" when
> the DOC officers used mace to separate Plaintiff and Boyce. (Rosenfeld Reply Decl. Ex. J at
> 7; see also Rosenfeld Decl. Ex. D. at 41-42.) About the surveillance footage between these
> two events, she stated, "it wasn't needed for the investigation." (Rosenfeld Decl. Ex. D at
> 25.) The fact, however, that only two four-minute portions of surveillance footage were
> deemed relevant to the DOC's investigation  of the use of force and inmate on inmate assault
> is separate and apart, and also less broad, as the inquiry about what was "potentially
> relevant" to a lawsuit against the DOC for failure to protect. *See Usavage*, 2013 U.S. Dist.
> LEXIS 45600, 2013 WL 1197774, at *10.
>
> *Taylor v. City of N.Y.*, 293 F.R.D. 601, 611 (S.D.N.Y. 2013).

Here, the Magistrate noted in a footnote that the plaintiff "failed to establish in which holding

cell the Assault occurred; if the camera in that holding cell would have captured the Assault; or

the picture quality of the video, including "inter alia, whether it captured stills, or moving

images, whether it was a fish eye or regular lens, or whether there were any blind spots." (See

Magistrate decision, p. 16, footnote 6).  While I have the utmost respect for Magistrate Scanlon,

the lower Court could not have been more mistaken on this point as virtually all of these issues

were established prior to the hearing even being conducted.  During discovery, it was revealed

that the arresting officer, defendant Robles informed the District Attorney's office that 'There is

video surveillance of the incident." (See Exhibit F annexed to Plaintiff's Motion). During

deposition practice, defendant Sergeant Yandeiry Urbanek admitted that the video would have

shown the assault and defendants never argued otherwise at any point in this case:

> Q. Had you looked at the video, would you have seen the punch?
> MR. MARQUEZ: Objection, speculation.
> A. To the extent that you can.
> Q: I guess the question really is, does the video, to your knowledge, take the whole room
> into account, you can see the whole room on the video?
> MR. MARQUEZ: Objection, but you can answer if you understand it.
> A. Yes.
> Q. So, if you had looked at the video, you suspect you would have been able to see what
> had happened?
> A. Yes.
> (See Exhibit L annexed to Plaintiff's Reply brief, Deposition of Sgt. Yandeiry Urbanek,
> pages 36, line 21, page 37, line 12 November 2, 2016).

At the hearing itself the undersigned never doubted that the Magistrate was aware of these

admission as it was argued in Plaintiff's Reply Brief on Page 8. Plaintiff argued in his motion

papers that the video evidence was crucial to his case and defendants never argued that the video

was not "relevant" other than to state that the video did not have audio. ("**Plaintiff, however,**

**does not show that the February 28, 2015 video recording would have had audio recording as**

**well." Defendants Memorandum in Opposition, page. 16**) At the hearing it was admitted that

there was a video camera in every cell in Central booking where inmates are housed and that the

video would capture incidents on the cell bench where the plaintiff testified he was sitting when

he was punched in the jaw. The testimony also established that the hallways leading to the cells

were under surveillance as well so that the identities of the guards coming and going to and from

the cell could be ascertained which is critical in Section 1983 litigation which requires "personal

involvement." The testimony at the hearing was that the quality of the video was not excellent

quality, but decent and functional. Therefore, it was undisputed in the entirety of this motion

practice that the assault would have been captured on the video and that the events leading up to

the assault as well as after the assault would have been captured as well.  The testimony at the

hearing only reinforced the admitted evidence that the report by defendant Robles to the District

Attorney's office on the day of the incident that "There is video surveillance of the incident" was

accurate.

Magistrate Scanlon erred by determining that the most critical and relevant evidence in this

case is neither relevant nor was its loss prejudicial to the plaintiff.  Furthermore, the Magistrate

erred in saddling plaintiff with every burden in this matter despite Rule 37(e)'s directive that the

moving party does not carry that burden.  Moreover, plaintiff cited caselaw before the

Magistrate that the spoliator bears the risk of disproving prejudice and that remains the law in

this Circuit.  See, *Encompass Ins. Co. of Am. v. English*, 2013 U.S. Dist. LEXIS 31152, at *10

(S.D.N.Y. Mar. 4, 2013) ("The Second Circuit has instructed that spoliation sanctions should be

crafted to (1) deter, (2) "place the risk of an erroneous judgment on the [spoliator]," and (3)

"restore the prejudiced party to the same position he would have been" absent the spoliation."

*Id*. (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).")

Magistrate Scanlon failed to effectively analyze the effect of the defendants allowing the

video evidence of the assault to be erased while the criminal prosecution was being litigated.

Defendant Robles, a defendant in this matter, as argued above, reported to the District

Attorneys' office that there was video evidence of the assault on the day of the incident.

However, he admittedly took no actions at all to preserve the evidence even though the person

he arrested for the crime was being prosecuted.  As was held in *DiStefano v. Law Offices of*

*Barbara H. Katsos, PC,* No. CV 11-2893 (PKC) (AKT), 2017 U.S. Dist. LEXIS 72137, at *66

(E.D.N.Y. May 10, 2017), following the Amended rule 37(e)'s effective date:

Based on the foregoing factors, the Court finds that, on the "continuum of fault ranging from innocence through the degrees of negligence to intentionality" in determining a culpable state of mind, this case falls on the spectrum somewhere between negligence and gross negligence, and closer to the former than the latter. *Residential Funding Corp.*, 306 F.3d at 108 (internal punctuation and citations omitted). While the Court does not find evidence of intentional, malicious spoliation in this case, Katsos has, at the very least, acted with "a pure heart and an empty head." *In re Pfizer*, 288 F.R.D. at 314; *see Harkabi*, 275 F.R.D. at 419 (quoting *Pension Comm.*, 685 F.Supp.2d at 464); *see also Mastr*, 295 F.R.D. at 85 ("That [defendant] acted in good faith does not mean, however, that it lacks the requisite culpability."). Taking all of these factors into account, the Court finds that Katsos had a sufficiently culpable state of mind.

Here, by allowing the video of the incident to be erased while the criminal prosecution against Mr. Marte was pending, it can not be argued effectively that the defendants were not negligent for allowing that to happen.  And as cited above, the Court in *Distefano* felt that even negligence was sufficient to meet the "culpable state of mind" standard which was decided post the amended Rule 37(e).

### III.   The Magistrate Failed To Properly Analyze Whether The Loss Of The Video Evidence Prejudiced The Plaintiff

Lastly, the result in this case is squarely at odds with the closest precedent, namely that of  *Taylor v. City of New York*, 293 F.R.D. 601, 609 (S.D.N.Y. 2013) and  *Thomas v. Butkiewicus*, No. 3:13-CV-747 (JCH), 2016 U.S. Dist. LEXIS 57163, at *1 (D. Conn. Apr. 29, 2016) both involving spoliation of video surveillance by police or Department of Correction employees.  The facts in *Taylor* are astonishingly similar to that of the matter at bar (inmate on inmate assault while in custody including the same injury involved: a fractured jaw) and the wildly differing result is unwarranted and undermines the principle of *stare decisis* and should be avoided.

With respect to demonstrating the prejudice of the video, the *Taylor* Court observed:

Here,  Plaintiff has met his burden to show that the deleted surveillance footage would have been of the nature he alleges based on the following circumstantial evidence: (1) Plaintiff went into the Pen B-4 holding cell without a broken jaw and he emerged at

around 3:15 p.m. with one, (see generally Compl.); (2) the Assault Footage shows that Boyce punched Plaintiff at around 12:22 p.m. and that there were approximately fifteen to twenty other inmates in the holding cell at the time, (see Rosenfeld Decl. Ex. C); (3) the Use of Force Footage shows that at around 3:00 p.m. only two inmates besides Plaintiff and Boyce remained in the cell, (see Rosenfeld Decl. Ex. B); and (4) Defendant Brantley testified that, over the course of three hours, DOC officers removed inmates from Pen B-4 for court appearances, and that whenever the officers did remove an inmate, they came to the holding cell door, near to which Plaintiff was standing, (see Rosenfeld Decl. Ex. D at 8, 12, 17-19, 50-51).

Taken together, these facts suggest that Plaintiff was left injured in the Pen B-4 holding cell for three hours while DOC officers repeatedly came to the holding cell door to remove other inmates. A reasonable trier of fact could therefore infer that, had the surveillance footage not been deleted, it would have corroborated his allegation that DOC officer John Doe #1 came into the holding cell and "looked right at" Plaintiff, who was "covered in blood and . . . spitting blood from his mouth and did nothing." (Compl. ¶ 59.) A reasonable trier of fact could also infer that the destroyed surveillance footage would have supported his allegations that "no DOC staff took any steps to protect him" during and after the assault by Boyce. (Id. ¶¶ 54-55.) A reasonable trier of fact could thus further infer that the destroyed surveillance footage would have supported Plaintiff's claim that the DOC officers in charge of supervising the Pen B-4 holding cell breached their duty to protect him, or were behaving in an otherwise negligent or complicit manner on May 24, 2011. (See id. ¶¶ 130-3, 134-35); see also Slovin, 2013 U.S. Dist. LEXIS 31858, 2013 WL 840865, at *5 (finding deleted video surveillance footage to have been of assistive relevance in tort action against Target because the footage "would have shown whether the Target employees were following or blatantly disregarding the internal policies described . . . [at] deposition").

*Taylor v. City of N.Y.*, 293 F.R.D. 601, 613-14 (S.D.N.Y. 2013)

The facts in *Ungar* are almost identical, although the claims differ as plaintiff here claims that

Mr. Marte was noticeably agitated before assaulting plaintiff, making anti semitic comments,

pacing the room, punching the walls and ignoring instruction of the guards all prior to his

unprovoked attack on the infant plaintiff.  There is no dispute that plaintiff was punched in the

jaw by Mr. Marte in the holding cell and that he sustained a fractured jaw thereby.  Mr. Marte

was, in fact, arrested and prosecuted for the crime.  While the parties here have no portion of the

video which was available in *Taylor,* the evidence below established that just as in *Taylor*,

inmates were being taken to see the Judge periodically and officers were in the area monitoring

the cell. (See generally,  Exhibit L annexed to plaintiff's Reply Memorandum, p. 33 line 2 to p. 34 line 10).  Just as in *Taylor*, a jury would have been able to view Mr. Marte's behavior before the incident to provide the officers notice that Mr. Marte needed to be separated from the general population due to the risk of a physical altercation.  As in *Taylor*,  the video would have shown the level of supervision in the area of the cell, whether the inmates were left alone for long stretches of time or whether there was closer monitoring.  Also, the video would have shown the full context of the assault on plaintiff, whether plaintiff interacted with Mr. Marte before the assault in any way and what Mr. Marte's demeanor and actions were immediately prior to the assault.  Given all of these facts, plaintiff has met his burden in demonstrating prejudice.   The Court in *Taylor* went on to caution other courts regarding holding the party seeking sanctions to an exacting standard when the Court held:

> A moving party can carry its burden and make "[s]uch a showing . . . by pointing to extrinsic evidence tending to demonstrate that the missing evidence would have been favorable to the movant." *Treppel v. Biovail Corp*., 249 F.R.D. 111, 122 (S.D.N.Y. 2008). This burden notwithstanding, "a court must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence because doing so would . . . allow parties who have destroyed evidence to profit from that destruction." *In re Pfizer, Inc. Sec. Litig*., 288 F.R.D. 297, 315 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Residential Funding*, 306 F.3d at 109; *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998).

> *Taylor v. City of N.Y.*, 293 F.R.D. 601, 613 (S.D.N.Y. 2013)

Plaintiff submits that the Magistrate held plaintiff to an improperly high standard and failed to properly analyze the prejudice plaintiff sustained by the complete loss of the videotape due to the defendants' failure to preserve any part of it.

## **CONCLUSION**

Wherefore, plaintiff respectfully requests that this Court overrule aspects of the Magistrate's decision dated February 16, 2018 and impose plaintiff's requested relief of either

striking defendants' Answer, directing that an adverse inference be awarded at trial,  lightening

plaintiff's liability burden at the time of trial as argued in plaintiff's reply brief, page 10,  citing,

*McEachron v. Glans*, 98-CV-17 (LEK/DRH), 1999 U.S. Dist. LEXIS 21928, at *10 (N.D.N.Y.

Aug. 25, 1999) and awarding plaintiff costs and attorney's fees for the instant spoliation motion

practice, hearing and appeal to this Court and for any and all relief deemed appropriate and just

by this Court.

Dated: Brooklyn, New York
      February 21, 2018

                                    Respectfully Submitted,

                                    **LAW OFFICE OF DAVID A. ZELMAN**

                                        /S

                                _____

                                By: **David A. Zelman, Esq.**

16